IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WILFREDO TORRES MASS**<br><br>Plaintiff<br><br>**v.**<br><br>**IJA INC.**<br><br>Defendant | **CIVIL NO.**<br>**3:25-cv-01371-ADC** |

## AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

The Plaintiff, Wilfredo Torres Mass, on behalf of his own interests, respectfully requests a Permanent Injunction[1] against IJA Inc. in accordance with Title III of the *Americans with Disabilities Act.*

## I.    PARTIES

1.    The Plaintiff Wilfredo Torres Mass, is a resident of the Municipality of Bayamón.

2.    The Defendant's name is Ija Inc. The Defendant is the owner, lessor, lessee, and/or operator of 11:11 Italia Urbana.

## II.    ALLEGATIONS

### A.  Regarding the Plaintiff Medical Conditions

3.    Mr. Wilfredo Torres has a health condition which generates a disability. The condition is as follows: Incomplete paraplegia at lumbar levels L1 and L2, a spinal cord injury that has caused significant neurological deterioration and loss of motor function in his lower extremities. This condition has resulted in permanent mobility limitations and substantial physical restrictions that affect his ability to independently participate in daily activities:

1

4.   As a result of his condition, Mr. Torres experiences profound mobility difficulties compared to the average person in the general population. He depends exclusively on a wheelchair for all his locomotion and transportation needs, as his spinal cord injury has eliminated his ability to bear weight or walk independently through his lower extremities.

5.   Incomplete Paraplegia at L1 and L2 levels primarily affects his lower body motor function, sensation and muscle control, resulting in paralysis and loss of voluntary movement below the injury site. Due to this neurological damage, Mr. Torres cannot walk, run, stand independently, or perform activities that require lower body mobility such as climbing stairs, stepping over obstacles, or transferring without assistive devices. His condition requires him to depend completely on upper body strength and wheelchair mobility for all movement and positioning.

6.   His condition also severely limits his ability to access environments that are not designed with appropriate accommodations for wheelchair users. Navigating spaces with steps, elevated surfaces, narrow hallways, or inadequate accessibility features presents insurmountable barriers to his independence and full participation in public accommodations, employment and community activities.

**B.  Concerning the Properties in Question and the Court's Jurisdiction**

7.   The property in question is a public accommodation known as 11:11 Italia Urbana, located at Santa Rosa, Bayamón, PR 00959-0000, with coordinates of 18.385154658850908, -66.1423681097952.

**C.  Discrimination in 11:11 Italia Urbana**

8.   Mr. Wilfredo Torres Mass feels a special interest in visiting the restaurant 11:11 Italia Urbana due to his passion for Italian gastronomy and his appreciation for dishes that combine tradition with intense and sophisticated flavors. Among those that most appeal

to him is the shrimp risotto with prosciutto and truffle oil, which stands out for its creaminess, the contrast between the seafood and the salty flavor of the ham, and the delicate aroma of truffle oil. He is also deeply interested in the seared salmon fillet, known for its smooth texture and robust flavor, as well as the arrabbiata pasta with seafood, which excels for its spicy intensity and abundant use of fresh seafood. For Mr. Wilfredo, these dishes represent the essence of Italian cuisine that he so values and wishes to enjoy.

9.    However, since late June 2025, Mr. Wilfredo has been aware of architectural barriers within 11:11 Italia Urbana that significantly affect his ability to access the restaurant safely, comfortably and independently. Although he approached the restaurant to enter and taste their menu, he was able to observe various difficulties that prevented his entry into the establishment. Subsequently, he corroborated this information through additional observations that confirmed the existence of said obstacles, which constitute a concrete barrier to his autonomous access.

10.   Although he intended to visit the restaurant during that period, he felt discouraged from doing so given the lack of adequate conditions that would allow him to enjoy the experience with dignity. Despite these limitations, Mr. Wilfredo maintains his desire to visit 11:11 Italia Urbana within the next three months, motivated by his genuine interest in enjoying the dishes that he finds so attractive. However, the persistence of these architectural barriers continues to affect his experience negatively. Mr. Wilfredo has knowledge of the following barriers in 11:11 Italia Urbana:

10.1.   Heavy Door: The mechanism of the heavy door requires more force than Mr. Wilfredo Torres' upper body can consistently provide, especially after the physical

effort needed to overcome other barriers leading up to the entrance. Mr. Wilfredo is aware that the door at 11:11 Italia Urbana requires significant force to open, combined with rugs that obstruct movement. This represents a considerable barrier for him, as he has motor limitations due to his incomplete paraplegia. This physical impediment not only complicated access but also increased his fatigue and dependency on others. The effort required to open the door and navigate the area before entering can be overwhelming, leading to emotional distress, frustration, and a feeling of helplessness. His independence is severely affected by these barriers, undermining his dignity and his ability to function autonomously within the establishment.

10.2.  Presence of Rugs that Hinder Access: Mr. Wilfredo is aware of the presence of rugs that hinder his access. The rugs create an unstable surface that can trap the wheels of the wheelchair, causing sudden stops or requiring additional space to maneuver, which may not be available. These issues make it more difficult to move freely and may even create situations where he needs to ask for help to proceed. In some cases, the rugs are thick or wrinkled, which not only disrupts smooth navigation but can also cause the wheelchair to get stuck, creating unnecessary physical strain or even the risk of falls. Mr. Wilfredo is fully aware of these risks, and the obstacles presented by the rugs undermine his ability to move independently. This increases his general frustration and affects his ability to experience the environment with the same ease as others, contributing to a sense of exclusion.

10.3.    Tables Inaccessible Due to Lower Support Bar: Mr. Wilfredo is fully aware that the tables at 11:11 Italia Urbana have a support bar beneath them, which prevents him from getting close enough with his wheelchair. This restriction limits his ability to sit comfortably and use the tables safely and practically. The presence of the bar eliminates the essential space necessary for him to place his legs under the table, forcing him to sit at an uncomfortable distance or preventing him from getting close enough. This not only affects his ability to participate in meals or other activities that require proximity to the table, but also generates a sense of exclusion. He cannot interact socially or engage in communal experiences the way others do. Moreover, this physical barrier forces him into an uncomfortable position and limits his ability to perform basic tasks, such as eating, writing, or using the surface for other purposes, further diminishing his autonomy and dignity.

10.4.    Excessively High Counter: Mr. Wilfredo Torres is aware that the counter at 11:11 Italia Urbana is at an inaccessible height, which discouraged him from visiting the establishment, as he knows he cannot be adequately served. This design flaw forces him to depend on others, undermining his autonomy and dignity, and constitutes a clear violation of his rights under the Americans with Disabilities Act (ADA), denying him equal treatment and the opportunity to act without obstacles. The raised height of the counter places transaction surfaces, payment terminals, and communication areas out of his comfortable reach, forcing him to either strain his posture or require the staff to lean down, creating an unequal and potentially humiliating dynamic. This height prevents him from seeing available

products, reading posted information, or having visual conversations with the staff, affecting the quality of service he receives. The inability to perform transactions privately also compromises his dignity, as the staff often has to raise their voice or repeat information to overcome the physical distance, jeopardizing his privacy.

10.5.  Total Absence of Support Bars in the Toilet: Mr. Wilfredo is aware of the absence of support bars in the toilet, which significantly affects him as he has reduced mobility due to his incomplete paraplegia. Without the support bars, Mr. Wilfredo is forced to perform risky movements when transferring or adjusting, increasing the risk of falls, injuries, or discomfort. This barrier directly affects his autonomy and independence, requiring help from others to perform such a basic task as using the toilet. The lack of proper support prevents him from performing this basic function independently, undermining his dignity and placing him in a position of dependency on others.

10.6.  Inadequate Toilet Height (15¾" vs. 17"-19" Required): Mr. Wilfredo is aware that the toilet is set at an inappropriate height, which creates considerable difficulty for him when attempting to use it. The toilet being too low forces him to exert additional effort to transfer, which can cause pain, fatigue, and an increased risk of falls. Additionally, this barrier undermines his dignity, as he must rely on assistance for tasks that should be independently accessible. The toilet does not meet the required specifications to facilitate proper access for people with reduced mobility, which increases frustration and decreases his quality of life.

10.7.    Inaccessible Bathroom Door Handle: Mr. Wilfredo is aware that the bathroom door handle does not comply with accessibility standards, as it requires gripping, pinching, or wrist-twisting movements that are extremely difficult for him due to his motor limitations caused by incomplete paraplegia. This condition prevents him from safely and independently using a knob-style or twist mechanism handle. The absence of an accessible lever-style handle or other ADA-compliant design forces him to depend on others to open or close the door, compromising his privacy and creating discomfort in a space that should be strictly personal. This barrier not only affects his independence but also undermines his dignity by exposing him to situations where he must request assistance for such a basic function as entering and exiting the restroom.

10.8.    Inaccessible Paper Dispenser (56" Height): Mr. Wilfredo is aware that the paper dispenser is located at an excessive height, preventing him from accessing toilet paper independently, forcing him to ask for help or make uncomfortable movements. This interferes with his ability to maintain personal hygiene autonomously, which directly affects his dignity and privacy. Not only does it prevent him from performing this basic function without assistance, but it also highlights the lack of accessibility in everyday elements, leaving him vulnerable to dependency and excluding him from private activities that should be fully accessible.

10.9.    Mirror Out of Accessible Range (51" vs. 40" Maximum): Mr. Wilfredo is aware that the mirror is placed at an inappropriate height (51") instead of the recommended 40" for wheelchair users. This placement prevents him from seeing

himself properly from his wheelchair. As a result, Mr. Wilfredo cannot perform daily activities, such as grooming or checking his appearance, independently. The barrier generates frustration and contributes to a feeling of exclusion, as he cannot interact with the space equally. This obstacle also prevents him from participating in simple tasks that are part of his daily routine, affecting his self-esteem and autonomy.

11.     To address these accessibility barriers at 11:11 Italia Urbana, a comprehensive renovation is required that includes: installing an automatic door opening system or significantly reducing the force required to open the main door, removing all rugs that obstruct passage or replacing them with non-slip surfaces at floor level, modifying tables by eliminating lower support bars and ensuring adequate clearance space to allow wheelchair access, redesigning or adding a section of the counter at an accessible height to facilitate transactions from a wheelchair, and completely renovating the restroom by installing support bars according to ADA specifications, raising the toilet to the appropriate height for safe transfers, relocating the paper dispenser to a reachable height, and lowering the mirror to a level where wheelchair users can see themselves adequately. These modifications would not only ensure compliance with the Americans with Disabilities Act (ADA), but would also create a truly inclusive environment where Mr. Wilfredo Torres and other wheelchair users can enjoy the establishment with complete dignity, autonomy, and independence.

12.     Mr. Wilfredo Torres Mass will be affected in the future by the barriers that exist at 11:11 Italia Urbana because he has concrete plans to visit it within the next three (3) months, motivated by his desire to enjoy its offerings and participate in the social environment it

represents. His interest is legitimate and ongoing, but the current conditions force him to postpone said visit for reasons of safety and dignity.

13.    Mr. Wilfredo Torres Mass feels deterred from visiting 11:11 Italia Urbana due to the architectural barriers existing there. Nevertheless, he intends to return to this establishment once those barriers have been removed. Only when all barriers related to his type of disability are eliminated will he be able to return and have full, equal, dignified, and safe access.

14.    Mr. Wilfredo Torres Mass reserves the right to return at any time to 11:11 Italia Urbana for any lawful purpose, even if that entails subjecting himself to discriminatory conditions, experiencing inconveniences not faced by non-disabled individuals, or exposing himself to risks to his personal safety and physical integrity.

15.    Because the construction and alteration history of the property where 11:11 Italia Urbana is located is not known at this time, it is alleged that: the property was constructed and/or altered after March 15, 2012; in the alternative, the property was constructed or altered after January 26, 1993; in the alternative, the property was constructed prior to January 26, 1993, but the defendant has the financial resources to bring the property into compliance with the most current building codes.

**D. Violations of Title III of the Americans with Disabilities Act (ADA) by Ija Inc.**

16.    Title III of the Americans with Disabilities Act (ADA) establishes that no person shall be discriminated against on the basis of their disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a).

17.  In the case of Wilfredo Torres Mass, standing under Title III of the ADA is based both on the discriminatory experiences their lived during their visits to the establishment and on the current deterrence he experience from returning. Congress expressly recognized in 42 U.S.C. § 12188(a)(1) that a person with a disability should not be required to continue subjecting themselves repeatedly to discriminatory conditions once he has "actual notice" that the establishment fails to comply with the accessibility requirements set forth in the law.

18.  Standing under Title III of the Americans with Disabilities Act does not require that a person with a disability physically expose themselves to known architectural barriers to demonstrate constitutional harm. This doctrine, known as "deterrence-based standing," recognizes that the mere frustration of not being able to access public places on equal terms, combined with a genuine intention to visit them once barriers are removed, constitutes actual and immediate harm that satisfies the requirements of Article III of the Constitution.

19.  Now, for purposes of standing, it should be noted that in the case Betancourt v. Ingram Park Mall, L.P., 735 F. Supp. 2d 587 (W.D. Tex. 2010), the Eleventh Circuit Court of Appeals held that the risk of suffering an injury is actually not speculative as long as discriminatory barriers remain in place, the person continues to be disabled and is "able and ready" to visit the facility once it is compliant. Furthermore, any disabled person who alleges that he is denied the opportunity to visit or who currently feels deterred from visiting a public accommodation that is violating Title III of the ADA, alleges present harm sufficient to obtain prospective relief, which is precisely what is available under Title III of the ADA. This dual aspect of particularized harm in ADA cases recognizes

both the immediate impact of direct discrimination and the long-term and more insidious impact of systematic barriers. In doing so, it reflects Congress's intent to provide a comprehensive and effective remedy for discrimination against persons with disabilities.

20.     The very fact that Wilfredo Torres Mass cannot enter 11:11 Italia Urbana constitutes clear harm, as he suffer emotional distress as well as being deprived of enjoying an experience that others without disabilities have.

21.     On the other hand, the "deterrent effect" doctrine has been widely recognized by federal courts, including the First Circuit. As established by the court in Disabled Americans for Equal Access, Inc. v. Ferries del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005): "A disabled individual who is currently deterred from patronizing a public accommodation due to the defendant's failure to comply with the ADA, and who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'actual or imminent' harm sufficient to confer standing."

22.     This interpretation is fully coherent with the remedial purpose of the ADA. Requiring that a person with a disability repeatedly subject themselves to the humiliation, frustration and physical danger of visiting an establishment that he know from direct experience is not accessible would be contrary to the principle of human dignity that federal law seeks to safeguard.

   **E.  Plaintiff Wilfredo Torres Mass possesses standing**

23.     Title III of the Americans with Disabilities Act (ADA) establishes that no person shall be discriminated against on the basis of their disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a).

24.    In the case of Wilfredo Torres Mass, standing under Title III of the ADA is based both on the discriminatory experiences he lived during their visits to the establishment and on the current deterrence he experience from returning. Congress expressly recognized in 42 U.S.C. § 12188(a)(1) that a person with a disability should not be required to continue subjecting themselves repeatedly to discriminatory conditions once he has "actual notice" that the establishment fails to comply with the accessibility requirements set forth in the law.

25.    Standing under Title III of the Americans with Disabilities Act does not require that a person with a disability physically expose themselves to known architectural barriers to demonstrate constitutional harm. This doctrine, known as "deterrence-based standing," recognizes that the mere frustration of not being able to access public places on equal terms, combined with a genuine intention to visit them once barriers are removed, constitutes actual and immediate harm that satisfies the requirements of Article III of the Constitution.

26.    Now, for purposes of standing, it should be noted that in the case Betancourt v. Ingram Park Mall, L.P., 735 F. Supp. 2d 587 (W.D. Tex. 2010), the Eleventh Circuit Court of Appeals held that the risk of suffering an injury is actually not speculative as long as discriminatory barriers remain in place, the person continues to be disabled and is "able and ready" to visit the facility once it is compliant. Furthermore, any disabled person who alleges that he is denied the opportunity to visit or who currently feels deterred from visiting a public accommodation that is violating Title III of the ADA, alleges present harm sufficient to obtain prospective relief, which is precisely what is available under Title III of the ADA. This dual aspect of particularized harm in ADA cases recognizes

both the immediate impact of direct discrimination and the long-term and more insidious impact of systematic barriers. In doing so, it reflects Congress's intent to provide a comprehensive and effective remedy for discrimination against persons with disabilities.

27.    The very fact that Wilfredo Torres Mass cannot enter 11:11 Italia Urbana constitutes clear harm, as he suffer emotional distress as well as being deprived of enjoying an experience that others without disabilities have.

28.    On the other hand, the "deterrent effect" doctrine has been widely recognized by federal courts, including the First Circuit. As established by the court in Disabled Americans for Equal Access, Inc. v. Ferries del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005): "A disabled individual who is currently deterred from patronizing a public accommodation due to the defendant's failure to comply with the ADA, and who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'actual or imminent' harm sufficient to confer standing."

29.    This interpretation is fully coherent with the remedial purpose of the ADA. Requiring that a person with a disability repeatedly subject themselves to the humiliation, frustration and physical danger of visiting an establishment that he know from direct experience is not accessible would be contrary to the principle of human dignity that federal law seeks to safeguard.

**F.    Wilfredo Torres Mass has suffered a concrete injury**

30.    Wilfredo Torres Mass has suffered a concrete and particularized constitutional injury that transcends any mere technical violation of a statute. As established by the First Circuit in Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005), "[a] disabled individual who is currently deterred from patronizing a

public accommodation due to a defendant's failure to comply with the ADA and who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA suffers actual or imminent harm sufficient to confer standing."

31.    In the present case, Mr. Wilfredo Torres Mass is not an "uninjured plaintiff" merely seeking the abstract enforcement of the law. On the contrary, he has experienced the following concrete and particularized injuries:

32.    Since June, 2025, Wilfredo Torres Mass has been deterred from visiting 11:11 Italia Urbana due to his specific knowledge of multiple architectural barriers that prevent his safe and dignified access. This deterrence is not hypothetical, but rather represents a present and continuous restriction of his rights.

33.    The knowledge of the barriers has generated in Wilfredo Torres Mass genuine feelings of frustration, humiliation, and social exclusion. These expressive damages are recognized by jurisprudence as concrete injuries that affect the inherent dignity of persons with disabilities.

34.    Wilfredo Torres Mass is prevented from participating in the experience offered by 11:11 Italia Urbana, such as the seafood and the salty flavor of the ham, and the delicate aroma of truffle oil. The seared salmon fillet, known for its smooth texture and robust flavor, as well as the arrabbiata pasta with seafood, depriving him of opportunities for community integration that are available to non-disabled persons.

35.    Mr. Wilfredo Torres Mass satisfies the requirement of "injury in fact" established in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), because he has suffered:

36. An invasion of a legally protected interest, such as his right under the ADA to equal access to places of public accommodation, which is being violated by the barriers in 11:11 Italia Urbana.

37. A concrete and particularized injury, since Mr. Wilfredo Torres Mass feels deterred from visiting 11:11 Italia Urbana, affecting him "in a personal and individual way," distinguishing it from a generalized injury.

38. An actual and non-conjectural injury, given that his present knowledge of the barriers and the resulting deterrence constitute an injury that occurs "de facto" in the present.

39. There is a direct causal connection between the architectural barriers maintained by 11:11 Italia Urbana and the injury suffered by Mr. Wilfredo Torres Mass. As established by the Eighth Circuit in <u>Kirchner v. ALBANIA, LLC</u>, No. 4:24-CV-206 HEA (E.D. Mo. Jan. 15, 2025), the plaintiff's proximity to the establishment and his history of interest in visiting similar establishments establishes a sufficient causal connection.

40. Mr. Wilfredo Torres Mass is not an "uninjured plaintiff" merely seeking the technical compliance of a statute. He is a person with a disability who has suffered a concrete, actual, and immediate constitutional injury as a result of his knowledge of architectural barriers that prevent his safe and dignified access to 11:11 Italia Urbana, combined with his genuine desire and specific intent to visit the establishment once such barriers are removed.

41. His case satisfies all the elements required for standing under Article III: (1) he has suffered a concrete invasion of his legally protected interest under the ADA; (2) there is a direct causal connection between the barriers maintained by the defendant and his injury; and (3) the judicial remedies requested would fully redress his injury.

42.    The doctrine of "deterrence-based standing" recognizes that forcing persons with disabilities to expose themselves to known barriers in order to establish standing would frustrate the fundamental objectives of the ADA of eliminating discrimination and integrating persons with disabilities into economic and social life. Wilfredo Torres Mass should not be required to risk his safety and dignity to vindicate rights that federal law guarantees him

### G. The "Futile Gesture" Doctrine and Its Application

43.    The ADA expressly incorporates the principle of the "futile gesture" in 42 U.S.C. § 12188(a)(1), establishing that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

44.    As the Ninth Circuit explains in _Pickern v. Holiday Quality Foods, Inc._, 293 F.3d 1133, 1136-37 (9th Cir. 2002), "once a plaintiff has ... become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." The court emphasized that this doctrine has its roots in _International Brotherhood of Teamsters v. United States_, 431 U.S. 324, 366 (1977), where the Supreme Court held that a person "need not expose himself to certain rejection or engage in a futile gesture to be the victim of unlawful discrimination."

45.    Requiring Mr. Wilfredo Torres Mass to attempt to enter 11:11 Italia Urbana knowing that the architectural barriers compromise his safety and dignity would constitute precisely the type of "futile gesture" that the law rejects. His specific knowledge of the barrier heavy door, high counter, inaccessible restroom provides him with "actual notice" of the noncompliance, thereby satisfying the requirements to invoke this protective doctrine.

### H. The ADA and Its Implementing Regulations

46.   On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

47.   The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

48.   Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

49.   Defendant is required to remove existing architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 CFR 36.304(a) and 42 U.S.C. Section 12182(b)(2)(A)(iv); in the alternative, if there has been an alteration to Defendant's places of public accommodation since January 26, 1992, the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facilities are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

50.    Defendant's facilities are not fully accessible to, and independently usable by individuals who use wheelchairs.

51.  While Defendant has a centralized approach to the design, construction, and maintenance of its facilities, it systematically and inadequately maintains architectural barriers at its counters. As a result, Defendant's facilities remain inaccessible and cannot be independently used by Plaintiff with a mobility disability.

52.  The defendant is urged to implement the necessary adjustments to the counters of the establishment to comply with ADA accessibility standards for individuals with mobility disabilities. Adhering to these standards is crucial to ensure equal access and comfort for Plaintiff, thereby preventing discrimination against them.

**I.  Distinction with Tester Cases without Concrete Injury**

53.  Unlike cases where courts have found a lack of standing, Mr. Wilfredo Torres Mass possesses characteristics that clearly distinguish him from a professional "tester":

53.1.  The establishment is located just 8 minutes by car from his residence, which represents an extremely convenient and practical distance for him. This proximity makes the place a highly accessible and attractive option, as it allows him to plan a visit without major logistical or transportation complications.

53.2.  His main interest in attending the establishment lies in the opportunity to taste its renowned and delicious dishes, with special enthusiasm for the seafood options that form a fundamental part of its menu. These products, prepared with freshness and quality, represent for him a gastronomic experience that combines flavor, tradition, and personal satisfaction.

53.3.  In addition, he maintains concrete plans to visit the place within a period of three months, motivated by his desire to enjoy the culinary experience offered by the establishment and to participate in the social and welcoming atmosphere that it

18

provides. This intention to visit is not merely hypothetical, but rather a real and specific plan, reaffirming his genuine and ongoing interest in fully enjoying the restaurant.

54. The First Circuit has consistently recognized that standing does not require prior visits when there is knowledge of barriers and a genuine intent to patronize. In <u>LaBonte v. Riverside Park Enterprises, Inc.</u>, No. 3:22-cv-30046-KAR (D. Mass. Jan. 7, 2025), the court explained that "Plaintiffs were not required to engage in the futile gesture of purchasing a probably expensive manual mobility aid that A.V. had no other use for and that Six Flags had no intention of allowing him to use in its water attractions to establish standing."

55. Similarly, in Disabled Americans for Equal Access, the First Circuit confirmed standing where the plaintiff "visited [defendant's] vessel on several occasions in 2001, 2002[,] and 2003" and alleged that he "intends to return to the Defendant's place of public accommodation and cruise vessel to avail himself of the goods and services offered therein." 405 F.3d at 64.

56. Following the above, the First Circuit recognized standing based on past visits and intent to return, establishing that "a real and immediate threat" of discrimination is sufficient to confer standing. 405 F.3d at 64.

57. Recent and persuasive decision of LaBonte: In this recent 2025 decision, the District of Massachusetts, taking into account the holdings of various circuits and the Supreme Court, explained in detail why the "futile gesture" doctrine allows standing without physical exposure to barriers, stating that "Section 12188(a)(1) thus 'negates any

requirement that a disabled person engage in a futile gesture to establish the existence of a discriminatory policy or practice' for purposes of bringing suit under Title III."

### III.     PRAYER FOR RELIEF

1.      Permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) ordering Ija Inc.:

  1.1.    Prepare and submit to the Court, within thirty days, a detailed barrier removal plan that complies with the 2010 ADA Standards for Accessible Design, showing how each modification will address the harms suffered by Wilfredo Torres Mass and allow for his safe and dignified return.

  1.2.    Implement said plan within a maximum period of one hundred eighty days, including:

  1.2.1.  Adjust the door closer mechanism to reduce the opening force to 5 pounds maximum or replace the door hardware with lighter components that meet ADA standards.

  1.2.2.  Remove all loose rugs and replace with permanent, low-profile flooring materials that are flush with the surrounding surface to ensure smooth wheelchair navigation.

  1.2.3.  Remove the lower support bars from existing tables or replace with wheelchair-accessible tables that provide adequate knee clearance space underneath.

  1.2.4.  Install a lowered counter section at wheelchair-accessible height or add a portable counter extension to accommodate wheelchair users for transactions.

  1.2.5.  Install ADA-compliant grab bars on both sides of the toilet and behind it, positioned at the correct height and distance for safe transfers.

1.2.6.   Replace the existing toilet with a comfort-height model or install a toilet seat riser to achieve the proper height for wheelchair transfers.

1.2.7.   Relocate the paper dispenser to an accessible height within reach range or install an additional dispenser at the correct level.

1.2.8.   Lower the existing mirror or install an additional tilted mirror at the appropriate height to accommodate wheelchair users' sight lines.

1.3.   Structural order of policies and practices:

1.3.1.   Adopt and publish an equal access policy that prohibits practices that discourage individuals with reduced mobility.

1.3.2.   Train all staff, within sixty days, on appropriate interaction with customers who use mobility aids and on the rights granted under Title III, documenting attendance and maintaining records for five years.

1.3.3.   Designate an internal accessibility coordinator responsible for receiving and resolving complaints, with the obligation to submit a semiannual report to the Court for two years.

2.   Declaratory order stating that the conditions described violate Title III of the ADA and that the removal of barriers is necessary to remedy the harm of frustration, exclusion, and deterrence experienced by Wilfredo Torres Mass.

3.   Ongoing judicial supervision: retention of jurisdiction by the Court to:

3.1.   Review the defendant's quarterly progress reports.

3.2.   Conduct on-site inspections, if necessary, to verify compliance.

3.3.   Impose civil or coercive sanctions for each day of noncompliance once the established deadline has expired.

4.      Attorney's fees, costs, and reasonable expenses pursuant to 42 U.S.C. § 12205, given the necessity of this litigation to protect the right to equal access and to encourage future compliance.

5.      Any other legal or equitable remedy that the Court deems just and necessary to ensure the complete removal of barriers and the full, safe, and equal enjoyment of the establishment by Wilfredo Torres Mass and the disability community.

**Dated:** September 2, 2025.

VELEZ LAW GROUP LLC
Civil Rights Division


*s/José Carlos Vélez Colón*
José Carlos Vélez Colón
USDC-PR 231014


1449 S Michigan Ave, Ste 13234
Chicago, IL 60605

E:      vlg@velezlawgroup.com
C:      (787)-422-1881

ATTORNEY FOR PLAINTIFF